485 F.2d 514
 UNITED STATES of America, Plaintiff-Appellee,
v.
James William EPPERSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold Gene EASLEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald D. WARREN, aka Robert Cox, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold Don CLABORN, Defendant-Appellant.
 Nos. 73-1609-73-1612.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 21, 1973.
 
 Lawrence Turoff (argued), Scottsdale, Ariz., for appellants.
 Daniel Knauss, Asst. U. S. Atty. (argued), William C. Smitherman, U. S. Atty., Phoenix, Ariz., for appellee.
 Before MERRILL and WALLACE, Circuit Judges, and CONTI,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 A jury found Warren and Claborn guilty of one count of marijuana possession with intent to distribute and aiding and abetting to do so and a second count based upon conspiracy. Epperson and Easley were found guilty only of the possession and aiding and abetting count.
 
 
 2
 Appellants raise two issues on this appeal: first, that the evidence was insufficient to sustain the convictions; and second, that the trial court erred in giving a jury instruction which allegedly comments improperly on the appellants' failure to testify. We affirm as to Warren and Claborn and reverse as to Epperson and Easley.
 
 
 3
 On July 29, 1972, United States Customs Agent Macias commenced a surveillance of Warren and Claborn which led him to a motel in Yuma, Arizona. Warren and Claborn were registered in room 12, and the Chrysler they had been driving was in the parking lot in front of their room.
 
 
 4
 The surveillance was discontinued on the morning of July 30, but resumed that evening, at which time Agent Macias discovered a Buick parked next to the Chrysler. Later, when the door to room 12 was left open, he observed that Easley and Epperson were in the motel room with Warren and Claborn.
 
 
 5
 At 12:30 a. m. on the morning of July 31, a Chevrolet bearing Mexican license plates arrived at the motel parking lot. The driver backed the Chevrolet up to the Chrysler so that the trunks of the two cars were facing each other. The driver got out of the car and walked directly to room 12, knocked and went in. Two minutes later Warren and Claborn exited from the room with the unidentified driver of the Chevrolet. The trunks of the two cars were opened and Warren and Claborn transferred two burlap sacks from the trunk of the Chevrolet to the trunk of the Chrysler.
 
 
 6
 During the transfer, Easley was standing at the door of room 12 and looking in the direction of the cars which were approximately ten yards away. Epperson was walking around in the room.
 
 
 7
 After the transfer, the Chevrolet drove off and Warren and Claborn returned to the room. Ten minutes later all four appellants, Warren and Claborn in the Chrysler and Easley and Epperson in the Buick, began to drive out of the parking lot. At this point the cars were stopped and searched by the customs agents.
 
 
 8
 Sixty-three pounds of marijuana were discovered in two burlap sacks in the trunk of the Chrysler and a walkie-talkie tuned to Channel 1 was found on the front seat. No marijuana was located in the Buick, but another walkie-talkie, of the same make and tuned to the same channel, was found under its front seat.
 
 
 9
 Mere presence at the scene is insufficient, without more, to establish guilt. United States v. Camarillo, 431 F.2d 616, 618-619 (9th Cir. 1970). The added fact that Easley and Epperson had in their possession a walkie-talkie tuned to the same channel as the other walkie-talkie is not sufficient to leave reasonable jurors "free of 'the kind of doubt that would make a person hesitate to act' in the more serious and important affairs of his own life." United States v. Nelson, 419 F.2d 1237, 1245 (9th Cir. 1969). The jury needed some evidence as to the reasonable connection between the two cars and the walkie-talkies. We may all speculate that those in the Buick were planning to scout the way for the car with the marijuana and warn of danger by use of the walkie-talkie. But there was no evidence upon which such an inference could reasonably be drawn by the jury. An objection, sustained by the trial court, prevented the government from providing this connection. Therefore, we reverse and remand as to Epperson and Easley.
 
 
 10
 Claborn, who was driving the Chrysler, does not raise the question of sufficiency of the evidence. Warren attempts to bring himself under the umbrella of the passenger doctrine. See United States v. Thomas, 453 F.2d 141, 143 (9th Cir. 1971), cert. denied, 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972) and cases cited therein. However, he was more than a mere passenger. He even participated in the physical transfer of the marijuana. The government presented facts against Warren "from which the trier of fact could draw the reasonable inference that the appellant was guilty beyond a reasonable doubt." United States v. Magana, 453 F. 2d 414, 415 (9th Cir. 1972). See United States v. Bonds, 435 F.2d 164 (9th Cir. 1970).
 
 
 11
 The only other question raised was whether it was reversible error to give, over objection by three of the appellants, the following instruction which was requested by Warren:
 
 
 12
 The law does not compel a defendant to take the witness stand and testify, and no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of a defendant to testify.
 
 
 13
 The trial court was put between the proverbial rock and the hard spot. However, he correctly stated:
 
 
 14
 I know of no way of not giving it and giving it at the same time. So the only thing I can do is either not give it or give it. So I am going to give it, because I think the law supports this more than it would be against it.
 
 
 15
 And that is the reason for the record, that I am giving it because one of the defendants does wish to have the instruction read, and I think he is entitled to it.
 
 
 16
 Under these circumstances it was not error to give the instruction. United States v. Schroeder, 433 F.2d 846, 851 (8th Cir. 1970), cert. denied, 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971). See Coleman v. United States, 367 F.2d 388 (9th Cir. 1966).
 
 
 17
 The judgment is affirmed as to Warren and Claborn and reversed and remanded as to Epperson and Easley.
 
 
 18
 Affirmed in part and reversed in part.
 
 CONTI, District Judge (dissenting):
 
 19
 I dissent from the reversal and remand as to Epperson and Easley.
 
 
 20
 It appears to me that we have more than mere presence which would vindicate said defendants. The facts presented by the government and considered by the jury must be taken in their totality and placed in perspective as to the events and transactions occurring at the time the crime was committed. The more important incriminating facts here are:
 
 
 21
 (1) Epperson and Easley, at 12:30 a. m., were at the motel room with defendants Warren and Claborn when the driver of the Chevrolet (the original car carrying the marijuana) knocked and entered the room.
 
 
 22
 (2) Easley watched, from the door, the transfer of two burlap sacks from the Chevrolet to the Chrysler, while Epperson was walking around the room. The door of the motel room was open at this time and approximately 30 ft. distant.
 
 
 23
 (3) After the transfer of the marijuana into defendants' (Claborn and Warren) Chrysler, they returned to the motel room with Epperson and Easley and ten minutes thereafter all four came out of the room and began putting articles and clothes into the trunk of the Buick.
 
 
 24
 (4) The four returned to the room several times and then Claborn and Warren got into the Chrysler and Epperson and Easley into the Buick, with Easley driving, Easley starting out of the parking lot first and the Chrysler following immediately.
 
 
 25
 (5) Each car had a walkie-talkie of the same make and tuned to the same channel.
 
 
 26
 When one considers the time of night, the persons present, the activities engaged in and the close proximity of each of the participants in the criminal transaction, one can only conclude that there existed more than "mere presence" at the scene by Epperson and Easley, and there was, rather, sufficient evidence for the jury to conclude that Epperson and Easley were active participants in the commission of the crime and not merely there as spectators.
 
 
 
 *
 Honorable Samuel Conti, United States District Judge, San Francisco, California, sitting by designation