567 P.2d 1220

**STATE of Arizona, Appellee,**

v.

**Waymon STOGLIN, Appellant.**

**Nos. 1 CA–CR 1784 and 1 CA–CR 1484.**

Court of Appeals of Arizona,
Division 1,
Department A.

June 9, 1977.

Rehearing Denied Aug. 16, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Criminal Division and Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edmund T. Allen, III, Deputy Public Defender, Phoenix, for appellant.

## OPINION

DONOFRIO, Judge.

Appellant Waymon Stoglin was convicted by a Maricopa County jury on two counts of selling a narcotic drug (heroin) in May of 1975. A sentence of not less than fifteen nor more than twenty years in the Arizona State Prison was imposed.[1] Stoglin appealed from the judgments of conviction and sentence and was granted a delayed appeal

---

1. Upon defendant's conviction in this case (Superior Court Cr–85938) probation in Superior Court Cr–77487 was revoked and a prison sentence of two to ten years was imposed therein to run concurrently with the sentence in this cause Cr–85938. An appeal was taken in Cr–77487 and following this opinion (1 CA–CR 1784 and 1 CA–CR 1484) a memo decision of reversal was rendered in that case 1 CA–CR 1505 (Filed June 9, 1977.)

from the Superior Court's denial of his motion to vacate the judgment. These appeals have previously been consolidated.

Phoenix police officers Garcia and Andrade were operating under cover in the fall of 1974. At trial they testified that on September 6 and October 3, 1974 they made purchases of heroin in the vicinity of Tops Tavern from appellant. Andrade made the first contact in the tavern parking lot through an unknown male who talked to a person later identified as appellant prior to the completion of the sale. Garcia testified that he saw appellant hand something to the unknown male but was unable to further identify the object since the discussion took place some distance from the officers and since it was approximately 9:30 p. m. Andrade testified that appellant handed this third person two objects but he too was unable to specifically identify the items transferred. While returning to the officer's vehicle, the unknown male dropped certain objects to the ground; Andrade, the unknown male and appellant searched for the objects and two balloons, one later confirmed to contain heroin, were retrieved. Andrade testified that immediately prior to the search Stoglin told the unknown male, "You can lose that balloon but don't lose my money."

The second transaction took place on October 6 at approximately 8:45 a. m. at the same location. Garcia and Andrade both testified that appellant sold them two balloons containing a substance later identified as heroin. Both officers also testified that Andrade had mistakenly identified a defendant in a prior criminal case resulting in the conviction of an innocent person. The identification in that prior case, as in the present one, was made by photo identification.

Appellant testified in his own defense. He admitted witnessing the first transaction and to helping Andrade and the third person, who he named, look for the fallen objects. However, he denied any involvement in either drug sale. Appellant further testified that he did not see the two officers on the date of the second sale as he

was at a drug rehabilitation center located on East Broadway at the time of the sale. Ms. Maxwell, the head nurse at the methadone clinic, testified that according to her records, appellant was present and received medication on October 3 sometime between 7:30 and 8:30 a. m. Jade Trask, a counselor at the clinic, testified that appellant was present at the center and in consultation with her from 8:30 to 9:30 a. m. on October 3. The trial court excluded Trask's record, Exhibit # 7, which substantiates her recollection that appellant was with her at the time of the second crime and thus could not have made the sale.

During cross-examination of appellant and closing argument the prosecutor referred to Stoglin's prior heroin addiction. Following the jury verdict appellant made a motion to vacate the judgment alleging that he had evidence that Andrade had mistakenly identified not one but five defendants in the past and that on the basis of this newly-discovered evidence appellant was entitled to a new trial.

The State and the defense counsel agreed that Exhibit # 7, a desk calendar page for October 3, 1974, was a document to be used at trial within the meaning of 17 A.R.S., Rules of Criminal Procedure, Rule 15.2. Prior to trial upon finding her unwilling to provide the documents the prosecutor asked defense counsel for copies of Trask's records. Defense counsel agreed to show the prosecutor the records but this remained undone at the time Trask testified. Appellant argues that the prosecutor waived discovery through his failure to reurge the request and that the suppression motion made at trial was untimely. Although the document itself was suppressed, the witness was allowed to and did testify to the substance of the information contained on the document.

The threshold question is whether the trial court abused its discretion in excluding Exhibit # 7, assuming that it was admissible as evidence or could be properly used by appellant at trial for a legitimate purpose. Although it is unclear when the prosecutor learned that Trask would be called as a

witness for the defense and that she possessed Exhibit # 7, the prosecutor did not request of appellant a list of tangible evidence to be used at trial when he signed the Omnibus Hearing Form on March 13, 1975. Appellant filed his notice of alibi defense, listed Trask as a witness in support thereof, and mailed to the prosecutor a copy of that document on April 22, 1975. The prosecutor knew that Trask was in possession of the exhibit at least ten days prior to trial as his investigator talked with her and viewed the exhibit. However, Trask refused to give the investigator the document or a copy thereof. Later the prosecutor called defense counsel concerning Trask's records, of which Exhibit # 7 is a part. It is unclear whether defense counsel possessed copies of the documents at the time this call was made. It is also unclear whether defense counsel told the prosecutor that he would give him copies of the records or whether he would show them to the prosecutor. In any event, the prosecutor failed to make a written request to defense counsel for the documents, assuming that the latter then possessed them or copies thereof, as contemplated by Rule 15.2(d). The prosecutor similarly failed to apply for an order compelling delivery of the records as contemplated by Rule 15.2(f). On May 9, 1975, four days prior to trial, the prosecutor called defense counsel's office in reference to the records but was unable to contact him as he was out of the office.

The trial commenced on May 12th. The prosecutor did not make a further request of defense counsel for Trask's documents nor did he bring the matter to the trial court's attention. On May 13th Trask commenced her testimony. In the middle of that testimony defense counsel began laying the foundation for Exhibit # 7. The prosecutor interposed an objection, whereupon a hearing was held in chambers. As a result of the discussion with counsel the trial court excluded the exhibit from use at trial.

■ It is clear that the existence of the exhibit and its contents were disclosed to the prosecutor within the meaning of Rule 15.2 at least ten days prior to this issue being presented to the trial court. Rule 15.2(c)(3) does *not* require defense counsel to tender copies of all the evidence that he will present, but rather only requires that he supply the prosecutor:

"(3) A *list* of all papers, documents, photographs and other tangible objects which he will use at trial." (Emphasis added)

The record conclusively demonstrates that there was *de facto* compliance with the rule insofar as the prosecutor was well aware of the document and its contents in advance of trial. Appellant was not responsible for the witness' refusal to tender her documents or copies thereof to the prosecutor since a witness does not become an agent of a party simply by her cooperation with that party. *State v. Piper*, 113 Ariz. 390, 555 P.2d 636 (1976). The prosecutor waived his objection to Trask's records substantiating her testimony by his failure to timely and properly raise it. Rule 16.1(c); *State v. Lee*, 25 Ariz.App. 220, 542 P.2d 413 (1975).

■ The issue then becomes whether appellant was prejudiced by having evidence (Exhibit # 7) important to his defense excluded by counsel's voluntary assumption of a duty not required of him by law or the Rules of Criminal Procedure. We think that he did not. It is clear that defense counsel was attempting to accommodate the prosecutor in the spirit of liberal disclosure rather than hide evidence from him. In the absence of appellant's duty to tender physical evidence, the prosecutor must carry the burden of informally accomplishing the transfer or make a timely motion and showing to the trial court entitling him to the remedy sought. See Rule 15.2(f).

■ Under this set of circumstances we hold that the trial court abused its discretion in excluding Exhibit # 7 from use at trial by the defendant. We next examine whether this error was harmless beyond a reasonable doubt. Trask was subjected to rigorous cross-examination by the prosecutor after the document was excluded. The main focus of the examination was her ability to precisely recall that appellant was with her on the date and during the period that the second sale took place. During this examination the court and the prosecutor, but not the jury, knew that there was a

document in court substantiating her testimony. A portion of the cross-examination follows:

"Q  Let's go back to that day that you so vividly remember, Jade, let's go back to the 3rd of October, 1974, wasn't it?

A  Yes.

Q  Are you sure it was not the 5th of October?

A  It was the 3rd of October.

Q  And on the 3rd of October you remember exactly what happened in the morning between 8:30 and 9:30?

A  Yes, I remember because I put forth the effort.

Q  My question is, do you remember?

A  I remember what happened.  Yes, I do.

Q  What happened the next day between 8:30 and 9:30?

A  October 4th?

Q  Do you remember?

A  Regular day, we have quite an uproar.  I probably interviewed another patient the next day.

Q  How about what happened the 2nd of October, 1974, do you remember what happened between 8:30 and 9:30 that day?  Yes or no.

A  What day is the 2nd of October?  Tell me what day it is.

Q  Do you remember what day it was on the 3rd?

A  No.

Q  You just remember it was the 3rd of October?

A  Yes.

Q  What time did he come in that morning on the 3rd?

A  I don't know what time he came in, but I know what time he came to see me.

Q  What time did he come to see you?

A  8:30.

Q  8:30 in the morning?

A  8:30 in the morning.

Q  What was he wearing that day?

A  I have too many patients to remember what he was wearing that day.  You know, all you can remember is the emotional state or the state of mind each patient is in."

We cannot say that the jury's evaluation of Trask's testimony and its ultimate decision would not have been different if they had seen or known of Exhibit # 7 since it substantially supports her testimony concerning appellant's whereabouts at the time of the second sale.  Since defense counsel's foundation for the introduction and use of the document was abruptly terminated by the prosecutor's objection and the trial court's ruling, we are unable to ultimately decide whether the exhibit was in fact otherwise admissible.  We merely hold that on the state of the record before us we cannot say that it was excludable for all purposes or that its exclusion was harmless beyond a reasonable doubt.  Inasmuch as the conviction must be reversed and remanded, for a new trial, we need not consider appellant's other conviction.

The conviction is reversed and the cause remanded for a new trial.

Reversed.

NELSON, P. J., and HAIRE, J., concur.